We will hear argument next in number 231528, Centripetal Networks against Palo Alto Networks. Mr. Hanna.  Thank you, Your Honors. May it please the Court. This case turns, as both parties have acknowledged, on claim construction. The claims in this case recite receiving a plurality of rule sets. After those rule sets are received, it recites executing a first rule set, a second rule set, and a third rule set in sequential order. The issue turns on whether long-standing precedent should be followed that every claim term is given patentable weight, specifically whether the rule sets that are received are the ones that are executed. The petitioner, in this case, has said no. There is no linkage between the received rule sets and the rule sets that are executed. Now the procedural history in this case is a little different. I'm not sure how important the procedural history is, but I guess just the way that I've been thinking about it is this seems to me one of those cases in which it is exceptionally easy to do what patent drafters do all of the time, which is to pay attention to the linking of different limitations, and it would have been trivial in the executing one to talk about the rule from among the received rule sets. And the absence of that very easy standard linking language seems to be, I don't know, speak volumes. And I'm not sure that there's anything remotely sufficient in the spec to provide a basis for overriding the absence of something that we would ordinarily expect to see. Well, if we have to point to the specification, Your Honor, I'd point you to the Appendix of 61, and we're talking about column 9, lines 11, lines 16 through 21, and this goes to the whole premise of the invention. The premise of this invention is to do what's called recovery from a denial of service attack. What that means is... The claims are not limited to that. The claims talk about executing these rule sets in sequential fashion in order to allow more and more IP addresses, essentially computers, to come online within a network. And so they are absolutely directed to this embodiment, in that it will receive these rule sets and then execute them. I would not be reading in limitations from the specification. Well, because it's providing the context for the invention. It could have been easily claimed, as Judge Toronto pointed out, and even the Board pointed out on page A11. They say, we ascertain no such limitation of rule sets. They say a first rule set could have been followed with the language of a received plurality of rule sets. Right? Well, it could have, Your Honor, but the way that it's drafted as is, it has that by implication. And as we know... But you have to have us find that from the specification, right? Well, no, I think it's in the claims as well. Because if you read the natural reading of these claims, it says receiving a rule set, a plurality of rule sets, and then executing those rule sets. And so... Except it doesn't use the word those. Well, it says... It doesn't use any linking language in a way that, it seems to me, patent drafters are... to be careful about. Well, Your Honor, I mean, this is common, as we pointed out in the mobile telecom case. This was the Eastern District of Texas case. We had very similar language, almost identical. That was receiving blocks of information, a plurality of blocks of information. And then it said, executing a first block of... Executing a first block of information, a second block of information, and a third block. And the court there held that if you don't have that linkage by implication, it renders the receiving element superfluous. It completely reads out that element altogether. And the court held that... I'm sorry, but why would that be true? Since receiving does tell you that there is, I'm sorry, rule sets must be received. Some rule sets must be received from elsewhere. The second step says, the second limitation says, you've got to execute a rule set, but that could be one that is already resident on the executing component. It doesn't make the first thing insignificant in what the claim covers. Well, Your Honor, that's exactly the opposite decision that was rendered in Mobile Telecom. They said specifically that just receiving a block of information, a plurality of blocks of information, or a plurality of rules, as in our case, there would be no point in order to receive those if you don't follow the natural reading of the claims. And the natural reading, if you give this to one of skill in the art, is that you would receive a rule set and you're going to execute those rule sets. What about, I think one of the arguments that is made is that the specification discloses an embodiment in which the rule sets can be changed during the course of the operation of the device such that, you know, maybe certain rule sets are received. It's a comprising claim. So because the rule sets could be changed, those last three limitations, executing the first set, the second set, the third set, could actually be referring to different rule sets than the initial ones that were received. So in those embodiments, Your Honor, you're talking about the rule sets that are received at this server. The server is actually the one that's going to be taking in a variety of information and it's going to be changing or updating those rules and then sending that to, for example, a gateway device. So the gateway device here is still receiving those rule sets that have already been changed. And then it's just executing those rule sets in order to allow more network devices to come online during these type of attacks. And so it comes down to, if you handed this to one of Skill and Art and how they're going to read this, they're going to read that says, receiving a rule set, a plurality of rule sets, and executing these rule sets in sequential order. There's, that's the natural reading of the claims. And otherwise, you're just completely reading out what receiving a rule set would be. It eliminates all of the context completely. And so the Energizer Foldings case is also relevant here because it tells us that you can have antecedent basis by implication. And that is exactly what we have here. The main argument on the other side is that it doesn't have the word the in the claims. Now, Energizer Foldings says you don't need that. If you have the proper context and you have a specification that supports that. And that's exactly what we have here. We have an embodiment that is directed exactly to these claims. And we have a natural reading of the claims that if you receive the rule set, those are going to be the rule sets that are executed. Our fourth argument in our briefing here is that there are, if there are multiple ways to interpret this, it goes to the longstanding doctrine that you should not snare the prior art. Which is exactly what the board did here. There's no question that, and there's no real argument on the other side, that the proper reading or natural reading of the claims could be that the rule sets that are received are executed. That's exactly what the spec says. And so, contrary to this longstanding precedent, the claim should be interpreted as they flow naturally, not to ensnare the prior art. And that was an error on the board in doing so. Now, based on this proper construction of the term, I think that reversal would be warranted based on the facts that have been issued here. In that, there is not a single rule, there are not multiple rule sets that are received in any of the prior art. There hasn't been an argument to that effect. And that also, that the art does not disclose a rule set that has multiple, that they have IP addresses as set forth in the claims. And so, the opposing side has raised collateral estoppel issues here. I think that that doesn't start, has no bearing in this case. It was under a different standard, a different claim construction standard. We have different limitations that are at issue here. The other patents talked about this dynamic security policy. That's not at issue here, which was interpreted to be a very broad term. And there's no disclosure and no discussion in any prior case of receiving these multiple rule sets with these increasing IP addresses. If Your Honors, I don't have any questions, I'll reserve the rest of my time for about a minute. Good morning, Your Honors. May it please the Court. My name is Andrew Ratch for Appellate Palo Alto Networks. I think there are three independent bases to affirm. The first is claim construction. And the second, we do believe collateral estoppel would apply if the claims are interpreted as the centripetal would like them to be. And third, even under centripetal's construction, even without the application of collateral estoppel, the Board made fact findings that would satisfy centripetal's construction. And those fact findings are supported by substantial evidence. I would like to start with the claim construction point because if the Court agrees with the Board's construction, that's dispositive of the appeal because centripetal makes no compatibility arguments under the Board's construction. As Your Honor, Judge Toronto pointed out, there are no linking words. Linking the executed rule sets to the received rule sets. That's it. I take it that the core of the argument on the other side is step back for just one second and see what surely is going on in these claims. And even in the absence of the linking words, it surely must be about the executing of what has been received. Why is that an incorrect argument? I think there are a couple of reasons why that's incorrect. Firstly, the received rule sets are there because they set up what is being addressed in the dependent claims. So each of the dependent claims in this patent specifically refer back to the plurality of rule sets and talk about executing one or more of those plurality of rule sets to do something other than forwarding packets. So in the independent claims, the executed rules are forwarding packets that correspond to network addresses. The dependent claims recite other rules such as blocking certain packets or sending packets to a monitoring device. So the received rules there are being set up to then provide antecedent basis support for every dependent claim. In addition, if we look only at the independent claim itself, for example, claim eight, which is a system claim, that recites a system where the processor is configured. It has memory instructions where the processor is configured to receive rules. So that's an important limitation all by itself separate from executing rules because that means it has the processing capability to receive rules from another device. And so it doesn't have to correspond, and in fact it doesn't in the claim language, correspond to the executed rules. And as your honor said, it's a very easy drafting exercise to add in linking language where that's intended. And again, the applicant did that in all of the dependent claims. It's expressly in the dependent claims linked back to the plurality of received rule sets. And it chose not to do that with respect to the executed rule sets of the independent claims because it had very broad claims. And I think the other facet that's important about just focusing on the independent claims is that the three executed rules are of a very particular type. They have particular criteria, which are network addresses, and a particular associated function, which is forwarding packets. None of that is recited with respect to the received rule sets, which could be of any type. And so again, you see there's not only no linking language, but the type of executed rule sets are of a particular type, whereas received rule sets can be of any type. And so again, you see there's no connection between the two. In addition, under their construction, it would impose an ordering of steps within the method claim one that's not expressly recited. It would require the receiving step to occur before the executing steps. And again, this is a case where the patentee knew how to impose an ordering of the steps when it intended to do so because it imposed an ordering of steps with respect to the execution. The first rule set must be executed before the second, must be executed before the third. So it had those tools available to it, those drafting tools, had it intended to create and craft claims in the way that Centripetal asks the court to construe them. There's certainly no argument been made that there's any sort of a stopper or, sorry, disclaimer or other sort of limiting language that would read in the embodiment at column nine of the 246 patent on the phased restoration service. But even if that embodiment were to apply and be limiting, nothing in that embodiment at column nine, that's lines 10 through 35, state where those rules come from. It talks about executing the three sequential rule sets, but it does not in any way limit the genesis or origin of those rules. In addition, there are certainly other, as the board below noted, there are other embodiments that would be addressed by these claims. And so the claims are not limited to those embodiments. In addition, just to briefly address the point that the council made with respect to the specification, there are certainly embodiments where rules are received from servers, from an external device. But that's not the only embodiment, and the specification is clear. For example, it's appendix 59, column five, lines 59 through 61, that the packet security gateway, that's the filter, may be configured to receive policies from a server. It doesn't have to be so configured. And just before that, at column five, again, starting at lines 44 going through 57, it discusses what the packet security gateway is, and the specification states that the packet security gateway itself has memory 204 that may include one or more program modules that when executed by processor 202, configure packet security gateway to perform various functions as described herein. So they're describing already a packet security gateway that has the programming to perform the functions described in the specification, which are modifying, creating, and executing rules. Court has no further questions on claim construction. I'll turn very briefly to the collateral estoppel point, and just note, our collateral estoppel argument isn't about the claim construction or depend upon what the different claims mean. The collateral estoppel has to do with the findings the board made in the prior IPR about the same art at issue here, that's YONC in view of FATIA. Those findings were made under the same standard. That's a preponderance of the evidence in both the prior board action and the board action below. The board's prior determination of the related 205 patent that was affirmed by this court. And in that prior IPR, the claims there, and that's the 205 patent, required receiving three successive dynamic security policies where each had more addresses than the previous one. It recited expressly what Centripetal says these claims would require under its construction. The board found that YONC in view of FATIA rendered obvious those limitations. This court affirmed, and we believe that collateral estoppel would apply to those factual findings. And those factual findings, when applied to their construction, satisfied the charge. Your opinion is that the board did not apply collateral estoppel, right? The board did not. We did say that the elements of collateral estoppel would require, but they just resolved it on the claim construction. Correct. The board, however, also made fact findings under the construction that it adopted. But those fact findings would satisfy even their proposed construction. And we believe that those fact findings are supported by substantial evidence. So the petition, what it set out, was that it relied upon YONC's rules, which are received from an external device. So YONC discloses dynamic rules received from YONC's external devices. To that applied FATIA's teachings of an expanding whitelist. So you apply FATIA's teaching of an expanding whitelist to the rules received from YONC's external devices. That was the ground. That's what the board understood the ground to be. And that's what the findings of the board made. And those findings are Appendix 27. That the grounds taught, and that YONC and FATIA teaches, applying an expanding whitelist over time to dynamic rules that are received from YONC's external devices. So it would be all received, and as you expand the whitelist over time, as those rules are received, they would have successively more network addresses. And the board cited Palo Alto Network's petition and evidence. It found it credible. That petition cited the declaration of Vijay Maddassedi, as well as the teachings of YONC and FATIA. And so we believe... Can I just ask this, and maybe it's more theoretical, or maybe of importance here, or maybe it is important on the collateral and settle question. You want to separate the different claim language, the different standards for claim construction. And say that it doesn't really matter what the claim construction standard would be. That's different, because we're just talking about the factual finding about what's in the prior art. But one element of issue preclusion or collateral estoppel is whether a particular finding is necessary to the outcome. What's necessary to the outcome would depend, would it not, on the claim construction in the given case. So that a finding might go beyond what was actually necessary in the earlier matter. In which case, perhaps, one element of collateral estoppel would not be met. I think in a theoretical sense, that might be the case. That's not the case here, and for two reasons. One, the claim language in the 205 patent, so that's the parent patent, and that can be found in the appendix. And that's claim one of the 205 patent. It was receiving dynamic security policies, and the specification sets forth what a dynamic security policy is. It's essentially the same as a rule. It includes one or more rules that specifies criteria and a function. Here, the reconstruction of a rule is, essentially, criteria and a specified function. So what the 205 patent required was, receive a first, a second, and a third dynamic security policy, each of which has more network addresses than the other. That's what they're saying the claims here mean. And the findings about the teachings of Jung and Bhatia in the prior IPR proceeding that was affirmed do not reach beyond what was necessary to decide whether the ARC taught that three successively receiving steps. And our point is simply that there were findings made about the ARC that were litigated extensively in that prior IPR proceeding and resolved in the final written decision. The same arguments that they're presenting here were made in that prior IPR. They were resolved by the board against centripetal, that is the ARC, the combination of Jung and Bhatia, teaches receiving three rules with successively larger sets of network addresses. And that decision was then affirmed by this court. Thank you. May I proceed, Your Honors? Yes, please do. Thank you, Your Honors. I think what's missing here is common sense and context of the claims. If we look at Claim 1, Claim 1 starts off saying... Right, but the principal point that I didn't want to start with  you can see that there's a lot of information in there. The point that Raj made about the common sense of this is that the opening receiving limitation serves a function in the claims as a whole by establishing a starting point for a whole lot of dependent claims. Why does that not provide a kind of common sense from a claim drafting standpoint for the existence of that limitation? Sure, Your Honor. I actually think that the dependent claims, as pointed out in our brief, supports the fact that these plurality of rule sets need to be executed. That's what the dependent claims say. If you don't execute these rule sets that are received, then you're not going to be able to perform the various functionality that's set forth in the claims. And that was laid out in our briefing. Again, this comes down to the context. If I hand this to one of skill in the art, what are they going to understand? This is what the court in Texas struggled with. They had the exact same language, receiving a plurality of blocks of information, and then executing first, second, third blocks without antecedent basis for the plurality. If you look at these contexts of the claims, it says receiving a plurality of rule sets. Then you receive a plurality of packets. And then it says you execute the rule set that specify which network addresses for which packets should be forwarded. The natural reading of that is that you receive these rule sets, you receive the packets, and then you're going to execute these rule sets for these packets. That's what the patent lays out. In each of those steps where it says executing, it always refers back to the first two limitations, the rule sets that are received and the packets that are received, at least by implication. It lays out that's why you have to have this solution. Again, looking at the context, if I was trying to prove this case in front of a jury using common sense, and I said the received rule sets don't have to be the executed ones, I don't think I'd even get to a jury at that point. I'd be kicked on summary judgment. A natural reading of this patent is that if you receive the rule sets, those have to be the same rule sets that are going to be executed. Otherwise, it doesn't make sense. It doesn't make sense in light of the specification, and that's why the law says that you have to give meaning to all the terms in the claim. You have to look at the context, including the specification, to provide that. Unless Your Honors have any questions, I'll say there is no time. Thank you. Thanks to both counsel. The case is submitted.